# CHARLESTON.

Hallie Davis *v.* Laurel River Lumber Company.

Submitted November 18, 1919. Decided November 25, 1919.

1. Master and Servant—*Unlawful Discharge—Breach of Contract.*

    One employed to render personal service to another for a specific term is entitled to recover damages for the breach of his contract of service in case he is discharged, without sufficient cause, before the expiration of the term. (p. 195).

2. SAME—*Discharge for Incompetency.*

One entering the service of another impliedly contracts to perform with reasonable efficiency the service he undertakes, and if, after he enters upon such employment, it appears that he is incompetent to perform with reasonable efficiency the service for which he is employed, the employer will have the right, without being liable for damages, to terminate the contract of service. (p. 195).

3. APPEAL AND ERROR—*Sufficiency of Assignment of Error—Refusal to Permit Question to be Answered.*

The refusal of the trial court to permit a question to be answered cannot properly be made the basis of an assignment of error, unless it appears from the bill of exceptions that the answer which would have been given to the question is material to the party offering the evidence, and this materiality may be shown by allowing the witness to answer the question in the absence of the jury, or by stating in the record the answer the witness is expected to make. (p. 196).

4. MASTER AND SERVANT—*Discharge—Damages Recoverable.*

One who enters the service of another under a contract for a definite term is *prima facie* entitled to recover the amount contracted to be paid for such services in case of his wrongful dismissal therefrom, less such amount as may have been paid him by the employer on account thereof. (p. 197).

5. SAME—*Discharge—Employment to Reduce Damages.*

It is the duty of one improperly discharged from an employment, by the terms of which he is under contract to render service for a certain term, to accept other employment of the same general character as that in which he is accustomed to work which may be offered him, or which may be obtainable by him, and thus mitigate the damages caused by the breach of the contract of service. (p. 198).

6. SAME—*Discharge—Burden of Proof—Mitigation of Damages.*

In an action to recover damages for the breach of a contract to render personal service, if the employer would mitigate the damages because the employe engaged in other employment, or could have done so, the duty rests upon him to show these facts, and in the absence of any such showing he is not entitled to any deduction on that account from the wages contracted to be paid to the employe wrongfully discharged. (p. 198).

Error to Circuit Court, Tucker County.

Action by Hallie Davis against the Laurel River Lumber Company.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Talbott & Hoover,* for plaintiff in error.

*D. E. Cuppett,* and *Chas. D. Smith,* for defendant in error.

RITZ, JUDGE:

Claiming that she was employed by the defendant as a milliner and clerk in its store for the period of one year, and that her contract of employment was broken by the defendant by discharging her without sufficient cause before the expiration of that time, plaintiff, after the expiration of the period for which she contends she was employed, brought this suit and recovered judgment for damages for the breach of said contract, from which the defendant prosecutes this writ of error.

The defendant conducted in connection with its other operations a large general store at Jenningston in Tucker county. In the month of August, 1916, it was desirous of securing the services of a milliner and clerk in its ladies' department.  The plaintiff's father worked for the defendant, and the manager of the defendant's store, knowing that plaintiff's older sister was an experienced milliner, had the father write to her with a view of securing her services.  When she receeived the communication she with the plaintiff came to Jenningston with a view of securing the employment for plaintiff, she being already satisfactorily employed.  In an interview with the defendant's store manager the plaintiff's sister informed him that she could not accept the employment, but would like to secure it for the plaintiff, her younger sister, and that she would be willing during the millinery season to assist her sister in the store without charge to the defendant, and would also purchase defendant's millinery stock without charge.  Plaintiff's manager decided at this time to employ the plaintiff at a salary of sixty dollars per month. She went to work on the 15th of August.  In accordance with the arrangement plaintiff's sister did go to Baltimore and purchase the stock of millinery for the defendant's store without making any charge for her services, and in September, when the millinery season opened, she went to work in the defendant's millinery department in order that her sister's work might

be done satisfactorily, in accordance with the arrangement made in August. Early in October some misunderstanding arose between plaintiff and the head clerk in the store, and plaintiff was informed by this clerk that he would have her discharged. She says that she had deferred her school work in order to accept this position, and it then being too late for her to enter school she did not desire to relinquish the work. She informed her sister, who was still working in the millinery department free of charge, of the statements made by the head clerk, and they together called upon the store manager and informed him thereof. He advised them that the head clerk had nothing to do with employing or discharging people, and according to the plaintiff and her sister stated that plaintiff's services had been entirely satisfactory. He was then asked if plaintiff's employment might be understood as continuing until the end of the year, or until the beginning of the next school year, and plaintiff and her sister both swear that he agreed with them that if the elder sister would come back in the spring and help the plaintiff in the millinery department, and would also purchase defendant's stock of millinery the next spring, as she had that fall, free of charge to the defendant, he would retain plaintiff in the service of the company until the expiration of the year from the time of her employment. Plaintiff and her sister both agreed to this arrangement, and as they say went away satisfied that plaintiff's employment would continue until the next fall unless it should turn out that she did not perform her work with reasonable skill and diligence. The defendant's store manager admits having a conversation with the plaintiff and her sister at the time testified to by them, but he says that all that transpired in that conversation was that he told them that the head clerk had nothing to do with hiring and discharging people, and that the plaintiff might remain as long as her work was satisfactory, without any understanding as to a definite term of employment. Under this arrangement, whatever it was, plaintiff continued to work for the defendant until the latter part of November of that year, when the defendant's store manager advised her that she was discharged. She protested to him against this action, and she says that on this occasion he told her that her work was entirely satisfactory, but that the head clerk had insisted that

unless she was discharged, he, the head clerk, would quit the service of the company, and under this threat of his subordinate the defendant's store manager dispensed with plaintiff's services. She was paid for the time that she actually worked, and upon her demand to be paid for the full term of her employment, according to her contention, the demand was refused.

The defendant seeks to defeat recovery upon the ground that there was no definite term of employment; that the plaintiff was paid by the month at the end of each month, and that it had a right to dispense with her services at the end of any month, regardless of whether she was satisfactorily performing her work or not; and further, that even though there was a definite term of employment her services were not satisfactory, that is, she did not perform her work in a reasonably efficient manner, wherefore it had a right to terminate the employment at any time.

Under the evidence in this case, as above outlined, there seems to be very little merit in either of these contentions. Both the plaintiff and her sister testify unequivocally that there was a distinct understanding that her employment was to continue for the term of one year, upon condition that her sister render free of charge to the defendant the service above indicated. This was done by the elder sister during the millinery season of the fall of 1916. It is true the defendant company's store manager claims the contract of employment was for no definite term. He is in direct conflict, however, on this question with both the plaintiff and her sister, and with the further circumstance, which he admits, that plaintiff's sister arranged to assist her in the work in the following spring. The court very fairly submitted this question to the jury, and the jury found that there was a contract for a definite term, as contended for by the plaintiff. We think its finding in this regard was entirely justified by the evidence.

The other contention, that plaintiff's services were not reasonably efficient, is without any, or very slight evidence to support it. Plaintiff and her sister both testify that the defendant's store manager informed her that her services were entirely satisfactory in October, upon the occasion that the contract was definitely entered into, and the plaintiff testifies that when

she was discharged in November this same manager told her that her services were entirely satisfactory, and it was only because of the threat of the head clerk to quit unless she was discharged that he was dispensing with her services. The defendant's manager says that plaintiff's services were fairly satisfactory, and when asked in what particulars she failed to do her work to his satisfaction, or in an efficient and proper manner, the only deficiency or defect pointed out by him is that on a few occasions she made mistakes in her charge slips, and he admits that these mistakes so slightly impressed him at the time that he never even called them to her attention. Upon the defendant's own showing the jury could not have found that the plaintiff had not performed her work in a reasonably efficient and proper manner.

Several errors are assigned to the action of the court in the admission and rejection of testimony, and in the giving of instructions. The defendant sought to prove by its store manager that he never employed anyone for longer than a month at a time, and this evidence was rejected. It may be that if the defendant had such a custom, and the same was known to the plaintiff, it would be proper evidence as tending to support the defendant's contention that this particular employment was for a month. Without deciding, however, whether it would be proper under those circumstances, it is sufficient to say that there is not even a suggestion in this record that the plaintiff knew of any such custom. She relies upon an express contract for a certain length of time, and not upon the plaintiff's custom for recovery, and unless she has proven her contract she is entitled to recover nothing.

The defendant's store manager was also asked whether in October, on the occasion at which the plaintiff and her sister contend the contract was made for a year's service, he had made statements to them to the effect that he liked the plaintiff's services, and would retain her in the service of the company for a year, and the court declined to allow these questions to be answered. This action is the basis of an assignment of error. It may be said that the witness had fully testified as to what happened on that occasion, and had given his version of the transaction. The jury had this testimony before it fully and com-

pletely, and it would add nothing to it to have had him in effect repeat his testimony in another form.  Further than this, the bill of exceptions does not disclose whether the witness would have answered in the affirmative or in the negative.  Of course, if his answer had been that he had made such statements it would have been in the plaintiff's favor, and the defendant cannot complain.  In the absence of a showing in the record as to what the answer of the witness would be, and that the evidence would be material for the defendant, we cannot consider the assignment of error.  *Kay* v. *Glade Creek & Raleigh R. R. Co.,* 47 W. Va. 467.

Another assignment of error is based upon the action of the court in refusing to allow the defendant's store manager to testify in answer to a question whether or not plaintiff's services were worth sixty dollars a month.  This evidence was properly rejected.  Plaintiff was suing on a contract by which the defendant agreed to pay her a certain sum for her services. Defendant's manager admits that she was employed at sixty dollars per month.  She was entitled to receive the sum agreed upon if she performed her duties in a reasonably efficient and proper manner, regardless of how much her services were worth. There is no question of *quantum meruit* involved in this case.

The action of the court in giving an instruction to the jury upon behalf of the plaintiff is also assigned as error.  This instruction is in effect that if the jury believed that if the plaintiff was employed for the period of one year, and if she was discharged from said employment for any other reason than failure to reasonably perform the duties for which she was employed, then she is entitled to recover such sum as may be found due her, not to exceed $720.00.  The objection to this instruction is based upon the limitation of $720.00 placed thereon by the court, that being a full year's salary, when in fact she had been paid for three and one-half month's work which she had actually done.  The jury found by its verdict the full sum of $720.00.  The circuit court, realizing that this verdict was excessive, and that he, perhaps, committed error in fixing that limitation of $720.00 in the instruction, expressed his opinion to set aside the verdict and grant to the defendant a new trial, unless the plaintiff would remit the amount

that had been paid her. This she did, and the court thereupon reduced the verdict to that extent, and rendered judgment thereon. This error in the instruction, if it was error, was thereby cured, and the defendant has no cause for complaint on that score.

It is further contended by the defendant that after plaintiff was discharged it was her duty to procure other employment if she could, and in that way mitigate the damages which she had sustained, and that she having failed to show that she had not had other employment, and if she had, what amount she had received therefor, or that she had tried to procure other employment and had failed, she was entitled to recover only nominal damages in case the jury found that there was a contract which had been broken by the defendant. It is quite true, where one is employed to render personal services for a particular term, and the contract is broken by the other party, it is the duty of such person to mitigate the damages by accepting other employment if the same is obtainable, and should the amount received by him as compensation for such other service equal the wages he was to receive from the party in default he would be entitled to recover only nominal damages, and if such amount is less than the wages contracted for, then he would be entitled to recover the difference. It may be said, however, that this showing is purely defensive. When the plaintiff has proven a contract for a particular term, and the breach of it by the defendant, he is, if he waits to bring a suit until after the expiration of the term, *prima facie* entitled to recover the full contract price, less such amounts as may have been paid him by the defendant. If the defendant would reduce this amount the obligation rests upon him to show that the plaintiff procured other employment for which he received compensation, and the amount thereof, or that such employment was offered him, or could have been procured by him, and he declined to take the same, and the amount which he could have earned had he accepted such other employment. There is no duty upon the plaintiff in a case like this to make this showing in order to reduce the amount which he is entitled to recover. 18 R. C. L., Title, Master and Servant, § 38; Labatt on Master and Servant, § 399; *Holway* v. *Going & Worthrup,* 6 L. R. A. (N. S.) p. 49, and

monographic note at page 108.   No attempt was made by the defendant to show that the plaintiff had earned anything during the term for which she claimed she had been employed by the defendant, or that she could have secured any other employment had she made the effort.   In the absence of such a showing upon the part of the defendant she was entitled to recover the full amount contracted to be paid her, less such sums as had already been paid by the defendant.

The judgment of the circuit court is clearly right, and the same is affirmed.

*Affirmed.*