David J. RICE, Plaintiff,

v.

COMMUNITY HEALTH ASSOCI-
ATION d/b/a Jackson General
Hospital, Defendant.

No. Civ.A. 6:97–1169.

United States District Court,
S.D. West Virginia,
Parkersburg Division.

Oct. 8, 1998.

Mark A. Atkinson & Susanne M. Cofield, Rose & Atkinson, Charleston, WV, for plaintiff.

Fred F. Holroyd and Tom Price, Holroyd, Yost & Evans, Charleston, WV, for defendant.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendant's motion for summary judgment.[1] After careful consideration, the Court **DENIES** Defendant's motion for summary judgment on the issue of breach of contract and **GRANTS** summary judgment on the defamation claim.

---

1. The Court notes the time for Defendant to file a reply has run. Accordingly, the Court rules on the issues as briefed.

## I. FACTUAL BACKGROUND

On June 17, 1996 Plaintiff, Dr. Rice, entered into an employment contract for a period of five years, beginning on July 1, 1996, to work as an emergency room physician and director of sports medicine for Defendant hospital. In September of 1996, a nurse working at the hospital complained to the hospital CEO, Mr. Rohaley, that Plaintiff had pushed a medical cart into her, bruising her leg. Rohaley suspended Plaintiff and conducted a five-day investigation into the incident. On September 23, 1996 Rohaley presented Plaintiff with a letter terminating his employment, alleging mistreatment of female hospital employees constituting hostile environment sexual harassment, violation of federal laws by refusing to treat a patient in the emergency room, and "other acts and omissions in violation of employment agreement and the employee handbook." Pl.'s Resp. to Def.'s Mot.Summ.J., Ex. 3.

Plaintiff alleges (1) he was wrongfully discharged in breach of his employment contract and (2) in the course of terminating his employment, Defendant made defamatory statements about Plaintiff.

## II. DISCUSSION

### A. Summary Judgment Standard

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

> Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for … discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

*Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994). *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Service Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.* 57 F.3d 1317, 1323 (4th Cir.1995). It is through this analytical prism the Court evaluates the parties' motions.

### B. Breach of Contract

The parties do not dispute that Plaintiff had a five-year employment contract with Defendant nor that the employment contract set forth the grounds and procedures for termination. The Court has examined carefully the materials presented by both parties on this motion for summary judgment on the breach of contract claim. The

Court finds and concludes that Plaintiff has presented genuinely disputed material facts. Those remain extant. Accordingly, Defendant's motion for summary judgment on the breach of contract issue is **DENIED**.

### C. Defamation

Plaintiff offers four theories to support his defamation claim against Defendant: (1) Plaintiff was defamed by the termination letter, (2) Plaintiff will be compelled to defame himself in the future by reciting the allegedly defamatory statements in the termination letter, (3) Plaintiff's co-workers have made defamatory statements about him, and (4) Plaintiff has suffered statutory or "insulting words" defamation, pursuant to *W.Va.Code* section 55–7–2.

■ The essential elements for a successful common law defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury. Syl. pt. 6, *Miller v. City Hospital, Inc.*, 197 W.Va. 403, 411, 475 S.E.2d 495, 503 (1996), citing syl. pt. 1, *Crump v. Beckley Newspapers*, 173 W.Va. 699, 320 S.E.2d 70 (1983).

■ Plaintiff claims that Defendant defamed him by writing the termination letter giving allegedly false reasons for Plaintiff's discharge. As Defendant argues, however, the letter was never communicated to a third party, i.e., "published." In a private meeting between the two men, Plaintiff took the letter from CEO Rohaley and put it in his pocket. Rohaley Dep. at 18. Plaintiff admits in interrogatory responses that he "is unaware of persons to whom the defendant has communicated concerning the wrongful termination." Answer to Interrog. No. 13, Pl.'s Answers to Def.'s First Set of Interrogs. Defendant did not report any reason for termi-

nation to the National Practitioners Data Bank. Rohaley Dep. at 18–20. Finally, Defendant's policy is not to provide any opinion of employees in response to inquiries, but to report only days of employment. *Id.* at 22. Thus, Plaintiff fails to demonstrate actual (or potential) publication of the allegedly defamatory letter, an essential element of common law defamation.

■ Plaintiff next raises a claim of compelled self-publication: "Because the plaintiff will be asked throughout his life about his wrongful termination by the defendant, the defamatory statements have been and will be published. The only alternative the plaintiff has is to lie or refuse to answer." Answer to Interrog. No. 13, Pl.'s Answers to Def.'s First Set of Interrogs. West Virginia courts have not addressed or recognized this issue of compelled self-publication.

Our Court of Appeals, however, rejected a self-publication claim in a situation similar to Plaintiff's. In *DeLeon v. Saint Joseph Hospital, Inc.*, 871 F.2d 1229 (1989), a surgeon who had been denied admitting privileges brought a defamation action against the hospital and chief of surgery. The Fourth Circuit refused to adopt DeLeon's self-publication claim, finding that "otherwise, the theory of self-publication might visit liability for defamation on every . . . employer each time a job applicant is rejected." *Id.* at 1237. For the same reason, this Court rejects Plaintiff's theory of defamation through compelled self-publication.

■ Third, Plaintiff points to rumors among co-workers, uncovered during discovery, that Dr. Rice performed unnecessary pelvic examinations on young female patients.[2] Similar allegations of defamatory statements by co-workers were made in *Miller v. City Hospital, Inc.*, 197 W.Va. 403, 475 S.E.2d 495 (1996). In *Miller*, as

---

2. *See* deposition of nurse Cynthia Powell, cited in Plaintiff's response to Defendant's mo-

tion for summary judgment at 7–8, but not otherwise identified.

here, no evidence was presented linking the hospital to the alleged defamation.

The hospital did not publish the false statement; the publisher, another employee of the hospital, did not supervise [the plaintiff]; the statements were not ratified by the hospital; and the false statements were not made in the course of employment. This case lacks . any nexus linking the alleged defamation to the hospital's conduct.

*Id.* 197 W.Va. at 411, 475 S.E.2d at 503. Mere allegations are insufficient in response to a motion for summary judgment to show "that there is a genuine issue for trial." Rule 56(e), W.Va.R.Civ.P. Plaintiff presents no facts which would lead a rational trier of fact to impute liability to the hospital for this alleged defamation.

■ Finally, Plaintiff points to the "insulting words" statute, W.Va.Code 55–7–2, which provides in pertinent part: "All words which, from their usual construction and common acceptation, are construed as insults and tend to violence and breach of the peace, shall be actionable." Plaintiff turns to statutory defamation because it "provides a cause of action for insulting words which are communicated only to the victim of the insult without the need for further publication." Syl. pt. 1, *Mauck v. City of Martinsburg,* 167 W.Va. 332, 335, 280 S.E.2d 216, 219 (1981). This Court has examined a similar claim that the insulting words statute was violated by a letter issued during a health care peer review. *Kinney v. Daniels,* 574 F.Supp. 542 (S.D.W.Va.1983). In that case, the Court considered the substantial truth of the letter and the context of peer review to find the statute was not violated. Here, the truth of the reasons given for termi-

nation remains to be determined, but the language of the letter,[3] while surely disturbing to Plaintiff, is not composed of "words which, from their usual construction and common acceptation, are construed as insults and tend to violence and breach of the peace." Were this Court to hold otherwise, every unfavorable employee evaluation and termination notice would be actionable under the insulting words statute. The Court finds and concludes that the termination letter does not contain "insulting words" so as to constitute a statutory violation.

## III. CONCLUSION

Accordingly, the Court finds and concludes that Plaintiff has failed to establish (1) publication of the allegedly defamatory letter, (2) a cause of action for compelled self-publication, (3) defamation by co-workers attributable to Defendant, or (4) a violation of the insulting words statute. The Court **GRANTS** Defendant's motion for summary judgment on the Plaintiff's defamation claim. The Court **DENIES** the Defendant's motion for summary judgment on the breach of contract claim.

---

**3.** The letter states:
Please consider this notice of your termination effective immediately[,] the reason for this termination has been discussed with you and generally involves the following: 1) Mistreatment of hospital employees especially female employees which results in the creations [sic] of a hostile work environment.

2) Violation of Federal laws providing for the prohibition of refusing to treat a patient in the emergency room.
3) Other acts and omissions in violation of employment agreement and the employee handbook.
Pl.'s Resp. to Def.'s Mot.Summ.J., Ex. 3.