**James Scott RUCKEL, Plaintiff,**

v.

**SEARS, ROEBUCK AND COMPANY, Defendant.**

No. CIV.A. 203–0021.

United States District Court, S.D. West Virginia, Charleston Division.

Oct. 20, 2003.

Henry E. Wood, III, Wood Law Office, Charleston, WV, for Plaintiff.

Cheryl H. Ledbetter, Brian J. Moore, Jackson Kelly, Charleston, WV, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

HADEN, District Judge.

Pending is Defendant Sears, Roebuck and Company's ("Sears") motion for summary judgment. The Court **GRANTS** the motion.

### I.  FACTUAL BACKGROUND

Ruckel suffers from cerebral palsy, a condition that slows his speech and actions slightly. The condition also causes him to have strabismus or "crossed eyes." Other than his slight slowness in some actions and his crossed eyes, however, Ruckel admits his condition has not otherwise adversely impacted his life. His condition neither requires medical care nor medication. He also does not participate in physical therapy, and he has no related mental or emotional conditions.

Ruckel cares for himself in terms of personal hygiene, driving, shopping, and other significant life activities. He maintains his lawn, performs normal household repairs, and enjoys fishing and traveling as his hobbies. He also enjoys building computers.

Ruckel is able to grasp objects, squat, crouch, and lift heavy objects as well as anyone else. He also walks as fast as most people. While he acknowledges he speaks slowly, he asserts he has no trouble communicating with others. While he does have strabismus, he explained his eyes are fine and that he wears glasses primarily for protection.

Ruckel reads the newspaper and spends time e-mailing his friends. It appears his condition only causes him to work more slowly than others. Ruckel also asserts, however, he performed his work in a timely manner and with the same general quality as his fellow employees.

Ruckel commenced work for Sears as an automotive service technician following high school, acquiring his position as a result of automotive courses he completed at Ben Franklin Career Center in Nitro. Ruckel worked for Sears at its Quarrier Street Auto Center for approximately 17 years. He performed a variety of tasks but focused primarily on changing tires and installing batteries. Ruckel concedes no one ever complained about his performance. He asserted some would tell him to speed up at times, but that "they were just joking." (Def.'s Mot. for Summ. J., Ex. 1 at 51.)

While his supervisors harbored concerns about Ruckel's negative attitude, and a propensity to "run his mouth," (*id.*, Ex. 2 at 15), they were not critical of his performance. According to Auto Center Manager Steve Goodwin, Ruckel performed his work "within the Company standards, within the 45 minute time line, and that's all we ask." (*Id.* at 15–16.)

It is a violation of Sears' policy for an Auto Center employee to work on his or her own vehicle. On June 12, 2002 Ruckel drove his mother's car to work and planned to rotate and balance the car's tires. Prior to performing the work, however, Ruckel met his direct supervisor, and Assistant Auto Center Manager, Ed Kordusky, in the men's restroom. Kordusky warned Ruckel not to work on *his* car. Ruckel asserts he did not think this extended to work on his mother's car, which was the one he actually brought to work. Rather than seek clarification of the directive, however, Ruckel simply responded "okay." (*Id.*, Ex. 1 at 79.)

Ruckel worked on the vehicle after Kordusky left for the day. Kordusky later

reviewed the previous day's work orders and learned of Ruckel's actions. Kordusky then informed Goodwin. After Goodwin consulted with other members of management, Ruckel's employment was terminated for violating Sears' policy concerning work on personal vehicles and for insubordination in doing so after being directed otherwise.

On December 6, 2002 Ruckel instituted this action in the Circuit Court of Kanawha County. Ruckel alleges he was terminated as a result of a physical disability in violation of the West Virginia Human Rights Act, W. Va.Code § 5–11–9. Sears removed January 8, 2003. Following expiration of the discovery period, Sears moved for summary judgment.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

> Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for … discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [the nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere specula-

tion or the building of one inference upon another," To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

*Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Service Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995).

### B. *The Merits*

In *Moore v. Consolidation Coal Co.,* 211 W.Va. 651, 657–58, 567 S.E.2d 661, 667–68 (2002), the Supreme Court of Appeals of West Virginia discussed the shifting-burdens analysis applicable to disparate treatment claims under the West Virginia Human Rights Act:

> This case is predicated solely upon a claim of disparate treatment. Under the Human Rights Act, such a claim of discrimination is governed by the familiar three-step evidentiary framework outlined in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668, 677–79 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under the *McDonnell Douglas/Burdine* structure, "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' .... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

*Id.* (citing *Shepherdstown Volunteer Fire Dep't v. State ex rel. West Virginia Human Rights Comm'n*, 172 W.Va. 627, 637, 309 S.E.2d 342, 352 (1983)(quoting *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093, 67 L.Ed.2d at 215); *see also Barefoot v. Sundale Nursing Home*, 193 W.Va. 475, 483, 457 S.E.2d 152, 160 (1995); *Conaway v. Eastern Associated Coal Corp.*, 178 W.Va. 164, 358 S.E.2d 423 (1986)).

In Syllabus Point 3 of *Hosaflook v. Consolidation Coal Co.*, 201 W.Va. 325, 326, 497 S.E.2d 174, 175 (1997), the West Virginia Court discussed the prima-facie-case requirement for disability discrimination:

"In order to establish a case of discriminatory discharge under W. Va.Code, 5–11–9 [1989], with regard to employment because of a handicap, the complainant must prove as a prima facie case that (1) he or she meets the definition of 'handicapped,' (2) he or she is a 'qualified handicapped person,' and (3) he or she

was discharged from his or her job." Syl. pt. 2, in relevant part, *Morris Memorial Convalescent Nursing Home, Inc. v. Human Rights Commission*, 189 W.Va. 314, 431 S.E.2d 353 (1993).

*Id.*

▪ In Syllabus Point 3 of *Stone v. St. Joseph's Hosp.*, 208 W.Va. 91, 94, 538 S.E.2d 389, 392 (2000), the Supreme Court of Appeals observed how an aggrieved employee might demonstrate his or her handicap or disability [1]:

Under our Human Rights Act ... a "person with a disability" within the meaning of the law means a person who has [1] *one or more physical or mental impairments that substantially limits one or more major life activities;* [2] a person who has one or more physical or mental impairments that does not substantially limit one or more major life activities, *but that is treated by others as being such a limitation;* [3] a person who has one or more physical or mental impairments that substantially limits major life activities *only as a result of the attitudes of others toward such impairment;* and [4] a person who has no such impairments, *but who is treated by others as having such impairments.*

*Id.* Distilling these component parts to their essence, one is within the governing definition if he either (1) has a physical or mental impairment substantially limiting one or more major life activities (disabled in fact); or (2) is either correctly or incorrectly regarded as having an impairment and/or substantial limitation (regarded as disabled).

▪ Sears is entitled to judgment as a matter of law on Ruckel's claim for at least two, distinct reasons. First, it is incum-

---

1. The alternating terms stem from a 1998 amendment. The changes involved substituting the word "disable" in place of the word

"handicap" in various locations. *See State ex rel. Ogden Newspapers, Inc. v. Wilkes*, 211 W.Va. 423, 433, 566 S.E.2d 560, 570 (2002).

bent upon Ruckel to prove, as part of his prima facie case, that he is either disabled in fact or regarded as disabled. Ruckel all but concedes he is not disabled in fact. Further, he fails to raise a genuine issue he has been regarded as disabled.

Indeed, this very capable individual reads and writes, builds computers, cares for himself, and by all accounts performed his job at or exceeding the expectations imposed by his supervisors. Under such circumstances, the Court concludes as a matter of law Ruckel is not disabled in fact. *See Hoops v. Elk Run Coal Co., Inc.,* 95 F.Supp.2d 612, 618 (S.D.W.Va.2000)("Jarrell asserts he was terminated because of his disabilities, a 1997 heart attack, a 1994 foot injury, and a 1993 hand injury. At the same time, he states none of those conditions prevented or limited him from doing his job or from engaging in any other activity. He cannot show a substantial limitation on any major life activity, nor a perception of such, and thus no protected disability."); *see also Thompson v. Catenary Coal Company,* No. 5:02–0147, slip op. at 14 (S.D.W.Va. Feb. 27, 2003).

The only indication Ruckel might be regarded as disabled by others is that he sometimes was, by his own admission, jokingly told to speed up during work. Those stray comments, however, without any further foundation, amount to at most a scintilla of indirect evidence of an improper motive. Accordingly, the Court concludes Sears is entitled to judgment as a matter of law. Ruckel does not meet the first element of his prima facie case.

■ The second ground upon which Sears prevails as a matter of law is that it has offered a legitimate, nondiscriminatory reason for Ruckel's dismissal. Sears asserts Ruckel was terminated for working on his car and disobeying his supervisor's orders not to do so. Ruckel might complain he did not work on *his* car, but

rather his *mother's* car. That assertion, however, does not advance his cause. *See Romney Housing Auth. v. West Virginia Human Rights Comm'n,* 185 W.Va. 208, 212, 406 S.E.2d 434, 438 (1991)("In a human rights case, ... the question is not whether an employment decision was essentially fair or whether it was made in accordance with pre-established procedures. The question is whether the individual was discriminated against because of ... handicap."); *Skaggs v. Elk Run Coal Co., Inc.,* 198 W.Va. 51, 79, 479 S.E.2d 561, 589 (1996)("[O]ur discrimination laws are not a form of job assurance for handicapped individuals .... Employers retain the right to restructure jobs and exercise business judgment, including even bad judgment. Employees can be let go for any reason or for no reason, provided that the reason is not a prohibited one.").

Absent any basis for a finding of pretext, the inquiry ends in light of Sears proffered, legitimate reason for Ruckel's termination. Sears is entitled to judgment as a matter of law for this separate reason.

Accordingly, the Court **GRANTS** Sears' motion for summary judgment. This action is **DISMISSED** and **STRICKEN** from the docket.

This Memorandum Opinion is published on the Court's public website at www.wvsd.uscourts.gov. The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

### *JUDGMENT ORDER*

In accordance with the Memorandum Opinion and Order entered today, the Court **ORDERS** as follows:

1. Sears' motion for summary judgment is **GRANTED**; and

2. This action is **DISMISSED** and **STRICKEN** from the docket.

The Clerk is directed to send a copy of this Judgment Order to counsel of record.